## APAPAS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 746.   Argued April 8, 1914.—Decided May 11, 1914.

The right of direct review by this court of a judgment of the District
Court under § 238, Judicial Code, depends upon whether the ques-
tion of jurisdiction only is involved or whether the case involves
the constitutional or Federal question.

This court cannot review directly the judgment of the District Court
on the question of jurisdiction under § 238, Judicial Code, when
under the writ of error the whole case is brought up and there is
no certificate as to the jurisdiction as required by § 238.

When the constitutional question was not raised in the court below this
court cannot directly review the judgment of the District Court
under § 238, Judicial Code.  *Itow* v. *United States, ante,* p. 581.

Murder committed by Indians on a United States Indian reservation
is a crime against the authority of the United States, expressly
punishable by § 328, Penal Code, and within the cognizance of the
Federal courts without reference to the citizenship of the accused.

Every objection to the admission of a statement or confession of the
accused cannot be regarded as involving the construction of the
Constitution merely because that instrument was referred to when
in substance and effect there was no controversy concerning the Con-
stitution but only a contention as to the method of procedure.

THE facts, which involve the jurisdiction of this court
to review judgments of the District Court under § 238,
Judicial Code, are stated in the opinion.

*Mr. Miguel Estudillo,* with whom *Mr. Theodore Martin*
was on the brief, for plaintiffs in error.

*Mr. Assistant Attorney General Adkins,* with whom *The
Solicitor General* was on the brief, for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Ten persons described as Indians were, in July 1912, indicted for the murder of William H. Stanley, a white person, "at, upon and within the limits of a United States Indian Reservation, known as the Cahuilla Indian Reservation, in the County of Riverside, within the Southern Division of the Southern District of California, and within the jurisdiction" of the court below, in violation of §§ 273, 275 and 328 of the Penal Code of 1909. As the result of a trial, four of the accused were acquitted and the six who are plaintiffs in error here were convicted of murder in the second degree and sentenced to ten years imprisonment each, and prosecute this direct writ of error to reverse such conviction and sentence. There are one hundred assignments of error, but before we come to consider them we must dispose of a motion made by the Government to dismiss on the ground that we are without jurisdiction because the case is susceptible only of review by the Circuit Court of Appeals of the Ninth Circuit.

Undoubtedly, under the general provisions of § 128 of the Judicial Code, power to review is lodged in the Circuit Court of Appeals of the Ninth Circuit, and our authority, if any, to consider the case depends therefore upon whether it comes within the class of cases authorized to be brought directly here from a trial court under the provisions of § 238. By such section in addition to the power conferred to bring directly to this court a question of jurisdiction of a trial court as a Federal court under the conditions and subject to the limitations stated, the right to directly review in a case of this kind is conferred only "in any case that involves the construction or application of the Constitution of the United States; in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its

authority is drawn in question; and in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States."

The settled significance of these provisions we have just pointed out in the case of *Itow and Fushimi* v. *United States, ante,* p. 581, just decided, and under the principle there applied it follows that we must determine the right to direct review by ascertaining whether any of the issues enumerated in the provisions of § 238 were below involved in the cause. Coming to apply this test, only three out of the matters assigned as error have any conceivable relation to the conditions defined by the statute as essential to give the right to a direct review. They are: (1) a challenge of the jurisdiction of the court below; (2) a contention as to the effect of the treaty of Guadalupe Hidalgo; (3) an assertion that a constitutional question was involved in the action of the trial court in admitting over objection, testimony as to a statement or admission of Ambrosio Apapas, one of the accused.

As to the first, while it was raised below, it is obviously inadequate to sustain the right to direct review, since under the writ of error the whole case is brought here and not the question of jurisdiction alone, as provided in § 238, and because there is no certificate as to the jurisdiction as required by the section. *Maynard* v. *Hecht,* 151 U. S. 324; *Chappell* v. *United States,* 160 U. S. 499, 507; *Courtney* v. *Pradt,* 196 U. S. 89, 91, 92.

While the second contention based upon the treaty of Guadalupe Hidalgo was raised in the lower court, it in no sense involved the validity or construction of the treaty, and therefore affords no support for the right to directly review. In substance the proposition concerning the treaty is this: that as the ancestors of the accused prior to the termination of the war with Mexico were citizens of Mexico, and became by the treaty citizens of the United States and of the State of California, they were therefore

not amenable to prosecution in the courts of the United States for the crime of murder committed within the State of California, however much they may have been susceptible of being prosecuted for such crime in an appropriate state court. But assuming, for argument's sake, the premise based on the treaty to be sound, and disregarding for brevity's sake the fact that the accused were tribal Indians leading a tribal life, and living on a tribal reservation under the control of the United States, the deduction based on the premise is so absolutely devoid of merit as not in any real sense to involve the construction of the treaty. We so say because the prosecution was for murder committed by Indians on a United States Indian Reservation and therefore was for a crime against the authority of the United States, expressly punishable by statute (§ 328, Penal Code), and within the cognizance of the courts of the United States, without reference to the citizenship of the accused, as settled by a long line of authority. *United States* v. *Kagama,* 118 U. S. 375; *United States* v. *Celestine,* 215 U. S. 278; *Donnelly* v. *United States,* 228 U. S. 243, 270; *United States* v. *Sandoval,* 231 U. S. 28, 39. Indeed, in answering the argument of the Government on the motion to dismiss, if not in express terms, at least virtually, it is conceded that the two propositions we have disposed of thus are inadequate to sustain the resort to a direct writ of error. But it is urged that the third contention plainly is sufficient for that purpose, that contention as we have said being based upon an exception taken to the action of the trial court in receiving testimony concerning an alleged statement or admission made by one of the accused, Apapas. But we search the record in vain to find the slightest reference made to the Constitution of the United States at the time the objection referred to was taken or anything whatever to indicate in any manner that the attention of the court below was directed to the fact that there

was any controversy or dispute involving the Constitution of the United States.

Under this condition, as pointed out in the case of *Itow and Fushimi* v. *United States, supra,* there is no ground whatever for saying that a constitutional right was involved within the exceptions created by § 238 so as to justify disregarding the regular course of judicial procedure by coming directly to this court. The theory upon which it is insisted in argument that the right to direct review results because of the action of the trial court as to the admission of the statement is based upon the premise that because the Constitution guaranteed against compulsory self-incrimination, therefore any objection made to the admission of the statement or confession by the accused necessarily and inherently involved a constitutional right and amounted to a statement of the same although no express mention was made of the Constitution and nothing appears to indicate that any contention whatever existed as to the significance and operation of the Constitution. But this proposition if carried to its legitimate conclusion would embrace every conceivable controversy as to every possible right, since under a constitutional system of government all rights in their last analysis are referable to the safeguards of the Constitution. But we need not further demonstrate the unsoundness of the contention since it is directly in conflict with the settled rule which we have just re-stated in the *Itow and Fushimi Case.* And although to go further is superfluous, to prevent misconception or unfounded inferences as to what we decide, we say that we must not be understood as holding that even although it be assumed for the sake of argument that the constitutional guarantee against compulsory self-incrimination would apply to an objection made to the offer in evidence of an admission by an accused person, it would follow that such guarantee would be involved in an objection to the admission in evidence of a confession in

the sense of § 238, even if in making the objection the guarantee of the Constitution was expressly referred to unless there was some real controversy concerning the meaning of the constitutional guarantee. We make this reservation because it is quite apparent that such an objection in the absence of some difference as to the significance of the Constitution might well involve but the exercise of discretion as to the order or method of proof and the calling into play of judgment to determine whether or not the proof as offered brought the question which was to be decided within the undisputed scope of the constitutional safeguard. In other words, we do not hold that any and every objection to the admission of a statement or confession of an accused can be made to involve the construction of the Constitution merely by referring to that instrument when in substance and effect there is no controversy concerning the Constitution but only a contention as to the methods of procedure. Conceptions which are well illustrated by the record before us, where the entire argument concerning the Constitution is based on the following objection taken to the admission of the statement of the accused: Counsel for accused, "One minute. We object that there is no proper foundation laid for a confession as there is no evidence to show that there was any (no) inducement or immunity offered or what the circumstances were under which the statement was made."

*Dismissed for want of jurisdiction.*